AB/2020R00584

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Claire C. Cecchi |
| | : | |
| v. | : | Criminal No. 23-CR-119 |
| | : | |
| NOEL DELEON | : | 21 U.S.C. § 846 |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1.  Unless otherwise indicated, at all times relevant to this Information:

### Background

a.  Defendant NOEL DELEON ("DELEON") was a resident of North Arlington, New Jersey and worked as an office manager for a medical doctor ("Doctor-1"). Doctor-1 was a registered practitioner with the United States Drug Enforcement Administration ("DEA"), which allowed him to dispense and issue prescriptions for certain controlled substances in the usual course of professional practice and for a legitimate medical purpose.

b.  Doctor-1 owned and operated a medical practice focused on psychiatry located in New Jersey (the "Medical Practice").

c.  Patient-1, Patient-2, and Patient-3 were each patients of Doctor-1 who received prescriptions for controlled substances.

d.  Dextroamphetamine-amphetamine (commonly known by the brand name "Adderall") is a stimulant medication listed as a Schedule II drug

under the federal Controlled Substances Act (the "CSA"), 21 U.S.C. § 801 *et seq.*, with a high potential for addiction and abuse and with severe restrictions on its accepted medical use.

### The Conspiracy

2. From in or about January 2018 to in or about March 2021, in the District of New Jersey, and elsewhere, defendant

**NOEL DELEON**

did knowingly and intentionally conspire and agree with Doctor-1 and others to distribute and dispense a quantity of a mixture and substance containing dextroamphetamine-amphetamine, a Schedule II controlled substance, outside the usual course of professional practice and not for a legitimate medical purpose, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

### Goal of the Conspiracy

3. The goal of the conspiracy was for DELEON, Doctor-1, and others to profit from the distribution and dispensing of dextroamphetamine-amphetamine by issuing prescriptions of dextroamphetamine-amphetamine outside the usual course of professional medical practice and not for a legitimate medical purpose.

### Manner and Means of the Conspiracy

4. The manner and means by which defendant DELEON and others sought to accomplish the goal of the conspiracy included, among other things, the following:

2

  a. DELEON assisted Doctor-1 in prescribing high dosage dextroamphetamine-amphetamine for certain of Doctor-1's patients outside the usual course of professional practice and not for a legitimate medical purpose, including without any meaningful evaluation of the patient and in amounts that exceeded what was medically necessary.

  b. During DELEON's time working for Doctor-1, Doctor-1 performed no meaningful evaluation of patients and the interactions between Doctor-1 and patients generally took less than five minutes. In addition, the Medical Practice kept inadequate patient medical records. For some patients, the patient files only contained contact and prescription information, but did not detail any meaningful evaluation or assessment. For other patients, no patient files were kept.

  c. After prescribing medications to a patient, including high dosage dextroamphetamine-amphetamine, DELEON or Doctor-1 would typically collect a cash payment from the patient. DELEON or Doctor-1 would then provide the prescription blank(s) to the patient.

  d. For prescription refills, patients would also contact DELEON directly by sending text messages to DELEON's personal cellular phone. DELEON would order the prescription refill at the patient's pharmacy and collect payment from the patient, typically through an electronic payment application on DELEON's personal cellular phone. At times, certain patients provided cash bribes to DELEON in order to receive their prescription refills faster.

e. Starting in approximately March 2020, Doctor-1 moved his/her practice to his/her residence. During this time, Doctor-1 left prescription refill blanks in his/her mailbox for patients who requested them without having performed meaningful evaluations of the patients. The patients then retrieved the prescription blanks from the mailbox and left cash payments. In other instances, patients would provide payments electronically to DELEON through the payment application on his personal cellular phone.

f. For example, DELEON assisted in providing Patient-1, Patient-2, and Patient-3 the following prescriptions of high dosage dextroamphetamine-amphetamine prescriptions outside the usual course of professional practice and not for a legitimate medical purpose:

i. From October 2018 to February 2020, DELEON ordered approximately 17 prescription refills for Patient-1 of 30mg dextroamphetamine-amphetamine, the highest dosage strength, despite DELEON knowing that Doctor-1 conducted no meaningful evaluation of Patient-1 before DELEON ordered these prescriptions, and that Doctor-1 and the Medical Practice kept no medical records for Patient-1.

ii. From July 2018 to January 2021, DELEON ordered approximately 22 prescription refills for Patient-2 of 30mg dextroamphetamine-amphetamine, the highest dosage strength, despite DELEON knowing that Doctor-1 conducted no meaningful evaluation of Patient-

2 before DELEON ordered these prescriptions, and that Doctor-1 and the Medical Practice kept no medical records for Patient-2.

     iii. From February 2018 to January 2021, DELEON ordered approximately 31 prescription refills for Patient-3 of 30mg dextroamphetamine-amphetamine, the highest dosage strength, despite DELEON knowing that Doctor-1 conducted no meaningful evaluation of Patient-3 before DELEON ordered these prescriptions, and that Doctor-1 and the Medical Practice kept no medical records for Patient-3.

 In violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATION

1. Upon conviction of the offense of conspiracy to distribute controlled substances, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846, as alleged in this Information, DELEON shall forfeit to the United States, pursuant to 21 U.S.C. § 853, all property, real or personal, obtained by DELEON that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

### Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of DELEON:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: 23- CR-119 (CCC)

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**NOEL DELEON**

## INFORMATION FOR

21 U.S.C. § 846

**PHILIP R. SELLINGER**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

ADAM BAKER
*ASSISTANT U.S. ATTORNEY*
*(973) 645-2858*